Hemphill, Ch. J.
I concur in the result and in that portion of tlie opinion which treats of the pleadings and of the averments essential iu a petition for a mandamus, and I dissent from tlie conclusion that the act of the chief justice is iinal and.conclusive.
The act of the chief justice is held to he judicial in its character. It must, therefore, have been the exercise of jurisdiction. This was inferior to the District Court, and consequently, by the Constitution, is under the general superintendence and control of the latter.
The superintending control of the District Court would be limited to a very narrow range if it could only compel tlie officer to act, and did not extend to the revision of his act however erroneous or illegal. It is of peculiar importance that tlie officer who lias the power to open the returns and declare tlie result should not he permitted to exercise an arbitrary, irrevisablc, capricious discretion as to whether some of tlie returns shall be counted and others rejected. The question whether an inferior judicature shall be permitted to exercise such absolute power over elections becomes of increasing interest every day. In tlie progress of opinion and in the advancement of political science the sphere of popular suffrage has been very much enlarged.
The power of appointments to many of tlie most important offices which had hitherto been vested in intermediate agents lias been received by the people; (hey are now tlie immediate fountains of almost all the offices and honors pertaining to the government of the country. This extension of the elective franchise, "’this resumption of the appointing power, is predicated on tlie supposition that tlie people themselves are the most safe depositories of tlie power; that (hey will display as much wisdom in the selection as did their agents; and that tlie chances of obtaining offiee through corruption and intrigue will be greatly diminished.
Ilmv important, then, that the will of the people in the exercise of these high powers should not he thwarted, and that the selection of the majority *239 should prevail, and that no inferior officer should be permitted, on whatever specious pretense, to obstruct the popular voice ami to declare that lie lias acted according to law, and that his rejection of perhaps nine hundred out of a thousand votes was in conformity with law and is subject to the revision of no earthly tribunal.
That tlie popular will may be fairly expressed, the Legislature has gone the length of declaring that every person not qualified who gives a vote shall be liable to a penalty of not less than fifty nor more than five hundred dollars. What, then, should be the penalty of a manager or chief justice, who should dare to disfranchise a qualified voter of his suffrage? No penally has been proscribed; but is the citizen, one of tlie constituents of the electoral college, without remedy? Is his voice to be silenced, his vote to be spurned and cast aside, on the ground that tlie act of tlie officer in its rejection, whether it proceed from fraud, or corruption, or ignorance, or mistake, cannot be reopened, revised and reversed, or annulled? '
I cannot assent to a conclusion so hostile to the clear, perfect, and indisputable right of suffrage; and when this right is’established, and it is shown that it has been lawfully exercised, and that tlie vote was returned in accordance with law, and that tlie officer unlawfully refused to estimate it in the result, a case is made, a predicament of facts is stated, which authorizes and imperatively requires ihe superior to compel the inferior court to give tlie rejected vote its full weight in the selection. Is there any other adequate, remedy? Is there any other mode of redress? And can there be a wrong without a remedy? and especially can the right of suffrage, the only political right which tlie people in representative forms of government have retained to themselves, be thus outraged without relief or reparation?
The right of suffrage in free governments is of priceless value. In fact tlie existence of such governments depends on tlie freedom as well as the purity of elections. IE aii armed force were to obstruct tlie voters and drive them from the polls, indignation would fill the land; but what is tlie difference to tlie voter whether "lie be driven off by a soldier, or by a civil officer, dressed in a little brief authority, spurning his vote, and declaring that his act is beyond the control of tlie higher tribunals, and that no court is open to the assertion of tlie voter’s right, however clear, unequivocal, and unquestionable that may be.
In tlie acts regulating general elections the certificates of tlie chief justice are not final anil conclusive. They may be reviewed and annulled in the tribunal designated by taw; and are tlie decisions of even these tribunals not under the supervision and control of tlie higher courts?
The decision of a district judge on the, election of the Comptroller, Commissioner of tlie General Laud Office, and other officers is subject to the revision of tlie Supreme Court; why should the judgment, of a County Court on a contested election for sheriff or clerk be beyond tlie control or supervision of tlie District Court? Is not tlie claimant of such an office as much entitled to the solemn judgment of the highest court in the country as tlie claimant for tlie office of judge, comptroller, &c.?
It may be said that no tribnnal or mode of revision has been prescribed under tliis special statute, but that is only in argument to show the necessity of tlie proceeding by mandamus. Many cases will be found in the books where courts have awarded mandamus under circumstances analogous to those in tlie case before the court.
"Where a man is refused to be admitted or wrongfully turned out of any office or franchise which concerns the public or the administration of j ustice, lie may be admitted or restored bv mandamus. (Bacon’s Abridg., Mandamus, letter C; 4 Burr., 1999, 2241; 5 Burr., 2682; 2 East., 177; 3 Burr., 1483; Cowper, 58; Duglass, 382; Bradley v. McCrabb, Dallam, p. 504.) If a mayor, alderman, burgess, common councilman, freeman, or other peivon, member of a corporation, having a franchise and freehold therein, be refused to he admitted, or *240 being- admitted, bo tnrnecl out or disfranchised without just cause, he may have his remedy by mandamus. (Bacon, Tit. Mandamus.) The acts of the government of the corporation were done by them in their deliberative capacity. They examined their laws and customs and the powers of their charter, and they acted on their judgment on tlie rights of the parly as arising under their laws, &c. But (heir acts, so far from being final, are frequently reversed, a different judgment is rendered, and by mandamus the authorities of tlie corporation are compelled to enforce the new judgment. (11 Co., 94.)
A mandamus is granted to the Commissioner of the General Land Office to compel him to issue a patent. Can it be pretended that the attainment of a just, decision in relation (o the right of the applicant to the particular land claimed does not involve a ranch higher order of judgment, a more enlarged and intelligent discretion, than do the duties imposed on the chief justice in ascertaining- the result of an election? The instructions of the statute to the latter are so plain that they cannot be mistaken or misunderstood by any person of ordinary understanding. He is to receive the returns sealed up and delivered under an oath, the terms of which and the time before which it is to be administered are prescribed in the law. These returns must be opened on (he tenth day, exclusive of (he day of election, the result estimated, the state of the polls in each precinct recorded, and a certificate of election given to the candidate who has the majority of the votes. (Arts. 911, 914, Dig.) Can there be any misapprehension as to the duties of these officers under tlie directions? But when a survey ón a first-class certificate is returned for patent, tlie Commissioner must determine its local situation; whether it be located and surveyed in tlie proper county or not, and this, from the confusion of county boundaries, is not always obvious; whether it he properly connected .with previous surveys, so that its true position on tlie county map may he determined ; whether tlie courses and distances are laid down correctly, so as to cover tlie land intended to be embraced and not conflict with other surveys; whether the amount, and that alone, of the land claimed under the certificate is included within the survey. Another question for his decision is whether the land is liable, to location, whether it be covered by old surveys and (¡ties valid by tlie law of the land or not. The records of the court will show that such questions in some instances can be determined only on repeated arguments and on the intellectual labors and researches of years. He must also ascertain whether the duties of the deputy and county surveyor have been performed in accordance with law or whether they require correction. He must judge upon legal evidence whether the certificate is genuine and legal; and if the applicant be an assignee and the certificate be not issued in his name, he must determine whether the instruments of mesne conveyance are executed by the proper parties in due legal form and have been proven according to law. These, are some of tlie duties of tlie Commissioner preliminary to the issue of a patent; and id certainly cannot be said that these are simple, involve no discretion or judgment, are immaterial in their character, in contrast witli those of the officer who opens the returns of au election and determines by the rules of addition -which candidate lias the greatest number of votes. We have determined that no man shall be deprived of his lands from the mistakes or errors of the Commissioner in the construction of the law. Tiie elective franchise is equally sacred, equally clear, and in my opinion we should hold that none should be deprived of their votes from the ignorance or mistakes of the officer whose duty it is to count them and declare tlx- result of tlie election.
I will close these desultory observations by an extract from the opinion of (lie learned and eminent judge who dissented in the case of Grier v. Shackle-ford, 9 Brevard, 491, and I adopt his views with some modifications. One of the managers from each precinct in South Carolina attends at the court-house on (lie day after the election, and the votes being counted, the result.is declared by tlie managers. After stating some objections to the mode of appointment of managers, which do not here exist in relation to the appointment *241 of chief justices, the judge proceeds: “Their (the managers’) fitness to determine nice and difficult questions is never regarded in making the appointment. It is not to he believed that the Legislature intended to confide to such a tribunal the ultimate decision of great constitutional questions — to hang the most important rights of the citizen on their arbitrary opinions. If they are to range through all the vagaries of their capricious fancies the elective franchise will become an idle mockery. It will vary in every district according to the views of the different managers, and fluctuate in the same district as the managers are changed or the tide of popular opinion ebbs and flows. Thus the Constitution will be blown about by every blast of popular fury, and this much boasted privilege of election become the instrument of party violence and political intrigue. The law never intended any such thing. This court cannot be deprived of its jurisdiction by implication. It is appointed by the Constitution to settle the law, that it may be uniform and certain, and its powers are commensurate with the object.”
Note 81.—Horton v. Pace, 9 T., 81; Meyer v. Carolan, 9 T.. 250; Puckett v. White, 22 T., 559; Marshall v. Clark, 22 T., 28; Durrett v. Crosby, 28 T., 687; Bledsoe v. Int. R. R. Co., 40 T., 537; Kuechler v. Wright, 40 T., 600.
IN’ote 82. — O’Docherty v. Archer, 0 T., 295; Walker v. Tarrant Co., 20 T., 36; Timmins v. Lacy, 30 T., 115; McClelland v. Shelby Co., 32 T., 36; Wright v. Fawcett, 42 T., 203; Ilogers v. Johns, 42 T., 339; Duer v. Police Court of Austin Co., 34 T., 283.
The fact is it is not matter of discretion whether a man shall have his land or his vote. His right to both is beyond question; and when they are refused, when tlie officers do not obey the law, tiiey have a right to the compulsory writs of the superior courts to compel obedience and to afford adequate and complete remedy.